## SALSBURG *v.* MARYLAND.

No. 38.   Argued October 20, 1953.—Decided January 11, 1954.

*Herbert Myerberg* argued the cause and filed a brief for appellant.

By special leave of Court, *pro hac vice, Ambrose T. Hartman,* Assistant Attorney General of Maryland, argued the cause for appellee. With him on the brief were *Edward D. E. Rollins,* Attorney General, and *J. Edgar Harvey,* Deputy Attorney General.

Mr. Justice Burton delivered the opinion of the Court.

The ultimate issue here is whether Maryland has violated the Equal Protection Clause of the Fourteenth Amendment by authorizing its courts, in prosecutions in Anne Arundel County for certain gambling misdemeanors, to admit evidence procured by illegal search or seizure. The violation is charged because Maryland, at the same time, prohibits the admission of such evidence in like prosecutions in other counties, and, even in Anne Arundel County, prohibits its admission in prosecutions for many other misdemeanors. For the reasons hereafter stated, we hold that Maryland's action is valid.

In 1952, police officers of Anne Arundel County arrested the appellant, Salsburg, and two other men, in a two-room building in the rear of a garage on the Governor Ritchie Highway in that County. The officers had no warrant but, when they received no answer to their knock on the locked door of the rear room, they broke it open with an ax. Upon entering, they found appellant and two companions, apparently engaged in operating a betting pool on horse races, and arrested them. The officers seized three telephones, two adding machines, several racing forms and much paraphernalia commonly used in operating such a betting pool. The State concedes that the entry, search and seizure were illegal.

Salsburg and his companions were brought to trial in the Circuit Court of Anne Arundel County charged with making or selling a book or pool on the result of a running race of horses in violation of Flack's Md. Ann. Code, 1951,

Art. 27, § 306.[1]   Before trial each of the accused moved
to quash the warrant, suppress and return the seized evi-
dence, and dismiss the proceeding against him, all on the
ground that the proceeding depended upon illegally
seized evidence.   Each claimed that the admission of
such evidence was prohibited by a Maryland statute,
known as the Bouse Act, and that a 1951 amendment to
that Act which purported to allow the admission of such
evidence, in such a prosecution in Anne Arundel County,
was invalid because in violation of the Fourteenth
Amendment.[2]   The trial court admitted the evidence.
Each of the accused was convicted and sentenced to serve
six months in the Maryland House of Correction as well
as to pay $1,000 plus costs.   The Court of Appeals of
Maryland affirmed the convictions of Salsburg's com-

---

[1] In the warrant which started this proceeding before a Justice of
the Peace, the section was identified as Art. 27, § 291, Flack's Md.
Ann. Code, 1939.

[2] At the time of the trial, the Bouse Act, including amendments,
appeared as follows in Art. 35, § 5, Flack's Md. Ann. Code, 1951:

"No evidence in the trial of misdemeanors shall be deemed admis-
sible where the same shall have been procured by, through, or in
consequence of any illegal search or seizure or of any search and
seizure prohibited by the Declaration of Rights of this State; nor
shall any evidence in such cases be admissible if procured by, through
or in consequence of a search and seizure, the effect of the admission
of which would be to compel one to give evidence against himself in
a criminal case; provided, however, that nothing in this section shall
prohibit the use of such evidence in Baltimore County, Baltimore City,
Anne Arundel, Caroline, Carroll, Cecil, Frederick, Harford, Kent,
Prince George's, Queen Anne's, Talbot, Washington, Wicomico and
Worcester Counties, in the prosecution of any person for unlawfully
carrying a concealed weapon. *Provided, further, that nothing in this
section shall prohibit the use of such evidence in Anne Arundel,
Wicomico* and Prince George's *Counties in the prosecution of any
person for a violation of the gambling laws as contained in Sections
303–329, inclusive, of Article 27, sub-title 'Gaming,' or in any laws
amending or supplementing said sub-title.*"   (Emphasis supplied.)

panions on the ground that neither of them could complain of the illegality of the search or seizure because they had no title to or interest in the premises searched. *Rizzo* v. *Maryland*, 201 Md. 206, 93 A. 2d 280. As to Salsburg, the tenant of the premises, the Court of Appeals heard further argument on the constitutionality of the 1951 amendment and then affirmed the trial court. 201 Md. 212, 94 A. 2d 280. His case is here on appeal. 28 U. S. C. (Supp. V) § 1257 (2).

The history of the Bouse Act is enlightening. Originally Maryland courts followed the common-law practice of admitting evidence in criminal prosecutions without regard to the legality of its obtention. *Lawrence* v. *Maryland*, 103 Md. 17, 32–37, 63 A. 96, 102–104. In 1914, the decision in *Weeks* v. *United States*, 232 U. S. 383, announced a contrary rule of practice in the federal courts. It held that evidence illegally seized by federal officers is not admissible in federal prosecutions. In 1928, the Court of Appeals of Maryland declined to adopt that practice and reaffirmed the Maryland common-law practice. *Meisinger* v. *Maryland*, 155 Md. 195, 141 A. 536. In 1929, the General Assembly of Maryland passed the Bouse Act substantially adopting the federal practice for prosecutions of misdemeanors in the state courts.[3] This left the common-law practice in effect in felony cases. *Marshall* v. *Maryland*, 182 Md. 379, 384, 35 A. 2d 115, 118; *Delnegro* v. *Maryland*, 198 Md. 80, 86, 81 A. 2d 241, 244.

In 1935, prosecutions under the "Health-Narcotic Drugs" subtitle of the general title "Crimes and Punishments" were exempted from the Bouse Act.[4] In 1947,

---

[3] The original Bouse Act, Md. Laws 1929, c. 194, consisted of only that part of the first sentence which precedes the first proviso in Art. 35, § 5, Flack's Md. Ann. Code, 1951. See note 2, *supra*.

[4] Md. Laws 1935, c. 59, now Art. 27, § 368, of Flack's Md. Ann. Code, 1951.

a proviso was added exempting, in Baltimore County, prosecutions for unlawfully carrying a concealed weapon. Md. Laws 1947, c. 752. In 1951, that proviso was extended to Baltimore City and 13 counties, including Anne Arundel. Md. Laws 1951, c. 145. In the same year the amendment now before us exempted prosecutions in Anne Arundel County *"for a violation of the gambling laws as contained in Sections 288 to 307, inclusive, of Article 27 of the Annotated Code of Maryland (1939 Edition)* [now §§ 303–329 of the 1951 edition], *sub-title 'Gaming,' or in any laws amending or supplementing said sub-title."* *Id.,* c. 704. Also in 1951 this exemption was extended to Wicomico and Prince George's Counties. *Id.,* c. 710.[5]

Appellant concedes that the State has the legislative "power" to choose either the rule which excludes or that which admits illegally seized evidence. He does not attack the validity of the application of one to felonies and of the other to misdemeanors. He contends, however, that the Equal Protection Clause of the Fourteenth Amendment is violated when Maryland admits the illegally seized evidence in prosecutions for certain misdemeanors in certain counties, but excludes it in prosecutions for the same type of misdemeanors in other counties and for somewhat comparable misdemeanors in the same and other counties. He sees no rational basis for the classifications made in the 1951 amendment.

Whatever may be our view as to the desirability of the classifications, we conclude that the 1951 amendment

---

[5] This trend has continued. In 1952, the exemption as to prosecutions for unlawfully carrying a concealed weapon was made statewide. Md. Laws 1952, c. 59. In 1953, the exemption as to prosecutions under the above-specified gambling laws has been extended to Worcester, Howard and Cecil Counties. Md. Laws 1953, cc. 84, 419. Finally, prosecutions in Wicomico County, under certain alcoholic beverage laws, have been exempted. *Id.,* c. 581.

is within the liberal legislative license allowed a state in prescribing rules of practice. A state has especially wide discretion in prescribing practice relating to its police power, as is the case here.

The 1951 amendment establishes no additional or different offenses in Anne Arundel County. It deals only with the admissibility of evidence in the prosecution of certain misdemeanors otherwise established by law. Rules of evidence, being procedural in their nature, are peculiarly discretionary with the law-making authority, one of whose primary responsibilities is to prescribe procedures for enforcing its laws. Several states have followed diametrically opposite policies as to the admission of illegally seized evidence. See Appendix, *Wolf* v. *Colorado*, 338 U. S. 25, 33–39. See also, *Adams* v. *New York*, 192 U. S. 585, 594–596. Maryland seeks to derive some benefit from each of the policies.

Appellant complains further that prosecutions for lottery misdemeanors are subject to the rule of exclusion of the Bouse Act, while those for operating gambling pools are exempt. He complains also that prosecutions for violations of county gambling restrictions are subject to the Act, while violations of comparable state gambling restrictions are not. In our opinion such differences are not fatal to the legislative scheme. We do not sit as a superlegislature or a censor. "To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co.* v. *Chicago*, 228 U. S. 61, 69–70. See also, *Dominion Hotel* v. *Arizona*, 249 U. S. 265, 268. Cf. *Johnson* v. *Maryland*, 193 Md. 136, 66 A. 2d 504.

We find little substance to appellant's claim that distinctions based on county areas are necessarily so unrea-

sonable as to deprive him of the equal protection of the laws guaranteed by the Federal Constitution. The Equal Protection Clause relates to equality between persons as such rather than between areas. This was established long ago in a decision which upheld a statute of Missouri requiring that, in the City of St. Louis and four counties, appeals be made to the St. Louis Court of Appeals, whereas appeals made elsewhere in that State must be directed to the Supreme Court of Missouri. Speaking for the Court, Justice Bradley said:

"[T]here is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. . . . It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." *Missouri* v. *Lewis*, 101 U. S. 22, 31.[6]

---

[6] "The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities

552

There seems to be no doubt that Maryland could validly grant home rule to each of its 23 counties and to the City of Baltimore to determine this rule of evidence by local option.[7] It is equally clear, although less usual, that a state legislature may itself determine such an issue for each of its local subdivisions, having in mind the needs and desires of each. Territorial uniformity is not a constitutional requisite. *Ocampo* v. *United States,* 234 U. S. 91, 98–99.

Maryland has followed a policy of thus legislating, through its General Assembly, upon many matters of local concern, including the prescription of different substantive offenses in different counties.[8] The cumbersome-

---

in different parts of the same State." *Id.,* at 31. See also, *Mallett* v. *North Carolina,* 181 U. S. 589, 597–599; *Hayes* v. *Missouri,* 120 U. S. 68, 72.

[7] *E. g.,* as to local option in relation to intoxicating liquor, see *Lloyd* v. *Dollison,* 194 U. S. 445; *Rippey* v. *Texas,* 193 U. S. 504; and see *Ft. Smith Light Co.* v. *Board of Improvement,* 274 U. S. 387, 391.

[8] Without appraising their validity, but as illustrating Maryland practice, we find Flack's Md. Ann. Code, 1951, full of such examples. Art. 2B—differing requirements as to sales of alcoholic beverages in various counties and cities; Art. 27, § 136—one county is exempted from a general prohibition against interference with water supply; § 146—deals with the effect of disorderly conduct in three counties; § 545—exempts two counties from certain provisions against placing tacks, broken glass, etc., on highways; § 566—makes special provisions as to junk yards in five counties; §§ 578–610B—prescribe a variety of Sabbath-breaking provisions for several counties and municipalities; Art. 51, § 7—grants a right of jury service to women, except in ten counties; § 9—provides varying methods of selecting jury panels in several counties. "It has long been the practice of the Maryland Legislature either to enact local laws or to exempt particular counties from the operation of general laws." *Neuenschwander* v. *Washington Suburban Sanitary Commission,* 187 Md. 67, 80, 48 A. 2d 593, 600; *Stevens* v. *Maryland,* 89 Md. 669, 674, 43 A. 929, 931. Cf. *Maryland Coal & Realty Co.* v. *Bureau of Mines,* 193 Md. 627, 69 A. 2d 471.

ness of such centrally enacted legislation as compared with the variations which may result from home rule is a matter for legislative discretion, not judicial supervision, except where there is a clear conflict with constitutional limitations. We find no such conflict here.

The presumption of reasonableness is with the State.[9] While the burden of establishing the reasonableness of the legislation was not on him, the Attorney General of Maryland has suggested here several considerations bearing appropriately upon the action of the General Assembly. Maryland lies largely between the metropolitan centers of Baltimore, in Maryland, and of Washington, in the District of Columbia. Between them are Anne Arundel County, adjoining Baltimore, and Prince George's County, adjoining Washington. In Anne Arundel lies Annapolis, the capital of the State, and considerable rural territory. Those locations suggest that, in matters related to concentrations of population, the state government might well find reason to prescribe, at least on an experimental basis, substantive restrictions and variations in procedure that would differ from those elsewhere in the State. Criminal law provides a long-established field for such legislative discretion.[10] In this

---

[9] ". . . It is . . . a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature was one in the enactment of which it has transcended its power." *Atchison, T. & S. F. R. Co.* v. *Matthews,* 174 U. S. 96, 104. "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U. S. 580, 584. See also, *Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152, 157–158; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78–79.

[10] *Metropolitan Casualty Ins. Co.* v. *Brownell, supra.* The State is not bound "to strike at all evils at the same time or in the same way." *Semler* v. *Oregon Dental Examiners,* 294 U. S. 608, 610.

connection, the Attorney General referred specifically to an increase in gambling activity in Anne Arundel County which he attributed in part to a policy adopted by the Criminal Court of Baltimore in imposing maximum prison sentences for gambling offenses, thus tending to drive gambling operations into adjoining areas. He suggested, as a justification for a legislative distinction between prosecutions for violations of state lottery laws and of the gambling laws here specified, that the former were of a more readily detected and easily proved character than the latter.

We find no merit in the suggestion of appellant that the 1951 amendment to the Bouse Act affirmatively sanctions illegal searches and seizures in violation of the Due Process Clause of the Fourteenth Amendment. If the statute were so interpreted such a question might arise.[11] However, the Court of Appeals of Maryland has not so interpreted it and nothing in its text suggests approval of illegal searches and seizures. The Act offers to offending searchers and seizers no protection or immunity from anything—be it civil liability, criminal liability or disciplinary action.

We sustain the validity of the 1951 amendment to the Bouse Act and the judgment of the Court of Appeals of Maryland, accordingly, is

*Affirmed.*

MR. JUSTICE REED took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting.

I am still of the view, expressed on other occasions (see *Wolf* v. *Colorado,* 338 U. S. 25, 40–41; *Schwartz* v.

---

[11] ". . . we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment." *Wolf* v. *Colorado,* 338 U. S. 25, 28.

*Texas,* 344 U. S. 199, 205), that the Fourteenth and the Fourth Amendments preclude the use in any criminal prosecution of evidence obtained by the lawless action of police officers who, in disregard of constitutional safeguards, ransack houses or places of business without search warrants issued under the strict surveillance which the Constitution commands.