Alan Keith FRANCIS, # 2968

v.

**STATE OF MARYLAND and Dr. Harold M. Boslow.**

Civ. No. B–75–1545.

United States District Court, D. Maryland.

Sept. 27, 1978.

---

petition presented substantial legal questions, the court appointed counsel to represent the petitioner. Counsel has submitted a memorandum of law in support of the petition, and the respondent has filed a memorandum in opposition.

On February 1, 1974 petitioner, then under eighteen years of age, was convicted as an adult in the Criminal Court of Baltimore City. Petitioner had been charged as an adult with robbery with a deadly weapon and as a juvenile with unauthorized use. After the juvenile court waived its jurisdiction over the unauthorized use charge, petitioner entered guilty pleas to both charges in the Criminal Court. Petitioner received a ten-year sentence on the armed robbery conviction and a two-year consecutive sentence on the unauthorized use conviction.

In 1974 proceedings concerning offenses committed by juveniles in Maryland were governed by one of two statutes, depending upon the locality where the offense was committed. Juvenile proceedings in Baltimore City and all Maryland counties except Montgomery County were governed by a public general law, *Annotated Code of Maryland,* Cts. & Jud.Proc. art. §§ 3–801 to 3–842 (1974). A public local law established somewhat different substantive law and procedures for juvenile proceedings in Montgomery County. *Annotated Code of Maryland,* Cts. & Jud.Proc. art. §§ 4–501 to 4–530 (1974).[1]

George W. Johnston, Baltimore, Md., for petitioner.

Francis B. Burch, Atty. Gen. of Md., Donald R. Stutman, Asst. Atty. Gen., Baltimore, Md., for respondents.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This petition for a writ of habeas corpus asserts an equal protection challenge to petitioner's conviction. Recognizing that the

Briefly stated, petitioner's claim concerning his robbery conviction is that under Maryland law existing at that time youths under the age of eighteen charged in Montgomery County with armed robbery were treated as juvenile offenders, but juveniles charged in all other Maryland counties and in Baltimore City with like offenses were tried as adults. Petitioner attacks his unauthorized use conviction on the ground that juveniles in Montgomery County were afforded an immediate appeal of an order

---

1. Since 1974 the public local law has been repealed, 1975 Md.Laws ch. 554, § 2, and the public local law has been amended, *Annotated Code of Maryland,* Cts. & Jud.Proc. art. §§ 3–801 to 3–834 (Cum.Supp.1977).

waiving[2] juvenile court jurisdiction, whereas waivers of jurisdiction by all other juvenile courts in the state were designated interlocutory orders, hence not immediately appealable.

At the time of petitioner's convictions in 1974, juvenile court jurisdiction in Baltimore City and all Maryland counties except Montgomery County did not extend to juveniles over the age of sixteen charged with the crime of robbery with a deadly weapon. *Annotated Code of Maryland,* Cts. & Jud. Proc. art. § 3–808(4) (1974). Montgomery County was exempted from that provision; the juvenile court in Montgomery County did have jurisdiction over juveniles over the age of 16 charged with robbery with a deadly weapon. *Annotated Code of Maryland,* Cts. & Jud.Proc. art. §§ 4–403, 4–504, 4–507 (1974). This exemption has since been repealed. 1975 Md.Laws ch. 554, § 2. Likewise, Montgomery County was excepted from the general rule whereby juvenile court orders waiving jurisdiction were defined to be interlocutory. *Annotated Code of Maryland,* Cts. & Jud.Proc. art. § 3–817 (1974). Since then the code has been revised to make immediately appealable an order waiving jurisdiction by the juvenile court of any subdivision of the state. *Annotated Code of Maryland,* Cts. & Jud.Proc. art. § 3–817(f) (Cum.Supp.1977). Petitioner argues that, because he was treated differently in these two respects from a juvenile in similar circumstances charged in Montgomery County, he was denied equal protection of the law as guaranteed by the Fourteenth Amendment.

■ In opposition to the petition, respondent first contends that the petition must be dismissed because petitioner has not exhausted available state remedies. Petitioner concedes that he has not properly presented his two claims to the courts of

the State of Maryland.[3] He further recognizes the fundamental principle that exhaustion of state remedies is generally a prerequisite to obtaining habeas corpus relief in a federal court. 28 U.S.C. § 2254(b); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ Petitioner contends, however, that his petition presents an exception to the general rule, arguing that resort to state courts would be futile in his circumstances. This court agrees. Four years ago the Court of Appeals of Maryland upheld the constitutionality of the two statutes that petitioner challenges, rejecting an equal protection argument identical to that made by the petitioner. *In re Trader* and *State v. Stokes,* 272 Md. 364, 325 A.2d 398 (1974). The Court of Appeals held that the appellant in each of those cases had failed to present sufficient evidence to controvert the presumption of constitutionality that attached to the statutes. 325 A.2d at 417–18. In view of the narrow language of this holding, it could be argued that petitioner theoretically might adduce sufficient evidence before a Maryland court to prevail on his constitutional claim. However, the court does not believe that as a practical matter petitioner would have any reasonable likelihood of obtaining a result contrary to that reached in *In re Trader* and *State v. Stokes.* The court is strengthened in this conclusion by the summary denial of petitioner's habeas corpus claim presented to the Baltimore City Court. Because the court finds it apparent in light of *Trader* and *Stokes* that petitioner would not obtain relief in the courts of the state of Maryland, petitioner will not be required to undergo the futile exercise of exhausting state remedies. *See Ham v. North Carolina,* 471 F.2d 406, 407–08 (4th Cir. 1973); *Perry v. Blackledge,* 453 F.2d 856 (4th Cir. 1971).

2. Both the public general law and public local law provided for circumstances in which the juvenile court could waive its jurisdiction over a youth charged with an offense. If jurisdiction was waived, the youth was tried as an adult in a regular criminal court. *Annotated Code of Maryland,* Cts. & Jud.Proc. art. §§ 3 816, 4 506 (1974).

3. Although petitioner filed a petition for a writ of habeas corpus in a Maryland state court, such a petition is insufficient to exhaust Maryland state remedies. *Jenkins v. Fitzberger,* 440 F.2d 1188, 1189 n.1 (4th Cir. 1971).

■ Petitioner correctly points out that the need for a three-judge court should be considered. Because this petition was filed prior to the repeal of 28 U.S.C. § 2281 by Act of Aug. 12, 1976, Pub.L. No. 94–381, it remains subject to any applicable requirements of § 2281. However, a three-judge court is not required when the constitutionality of a state statute is challenged in a habeas corpus proceeding. *Wilson v. Gooding,* 431 F.2d 855, 857–58 (5th Cir. 1970), *aff'd,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 401 (1972); *United States ex rel. Shaban v. Essen,* 386 F.Supp. 1042, 1044 (E.D.N.Y. 1974), *aff'd,* 516 F.2d 897 (2d Cir. 1975).

Turning to the merits of petitioner's claim, petitioner argues that the court must subject the state statutes to strict judicial scrutiny, under which the statutes may be upheld only if they are "shown to be necessary to promote a compelling governmental interest." *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969) (emphasis deleted). Petitioner does not argue, and he could not, that the statutory classification created between juveniles charged in Montgomery County and those charged elsewhere in the state is a suspect classification. It obviously does not distinguish among individuals on the basis of race or alienage or discriminate against any other distinct minority. Rather, petitioner contends the classification impinges upon certain fundamental constitutional rights, specifically, his right to equal treatment in the criminal trial and appellate processes and his right to vote. Petitioner then argues in the alternative that in any event the statutory classification lacks even a rational basis.

The Supreme Court has considered several challenges founded on the equal protection clause to territorial classifications affecting the criminal justice system within a state. Most recently, in *North v. Russell,* 427 U.S. 328, 338–39, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), the Court upheld a challenge to Kentucky constitutional provisions classifying cities by population and statutory provisions permitting lay judges to preside in courts in certain cities while requiring law-trained judges in others. After

noting that the Kentucky Court of Appeals had advanced several justifications for the classification, the Court cited with approval *Missouri v. Lewis,* 101 U.S. 22, 25 L.Ed. 989 (1880),

> which held that as long as all people within the classified area are treated equally:
>
> > "Each State . . . may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right." *Id.,* at 30–31.

427 U.S. at 339, 96 S.Ct. at 2714. The *Lewis* case had upheld a Missouri statute requiring that appeals from convictions in the City of St. Louis and four counties be taken to an intermediate level appellate court whereas appeals filed elsewhere in the state proceeded directly to the Supreme Court of Missouri. In *Hayes v. Missouri,* 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887), the Court rejected an equal protection attack upon a Missouri statute providing the state fifteen peremptory challenges in capital cases tried in cities having a population in excess of 100,000 but eight challenges in all other capital cases.

The Supreme Court has also considered territorial classifications in two cases arising in Maryland. In *Salsburg v. Maryland,* 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954), decided prior to *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court considered a Maryland statute allowing the admission of illegally seized evidence in prosecutions for gambling misdemeanors in several Maryland counties but prohibiting its admission elsewhere. The Court held the statute to be "within the liberal legislative license allowed a state in prescribing rules of practice." *Id.* 346 U.S. at 550, 74 S.Ct. at 282. Referring to *Missouri v. Lewis, supra,* the Court considered it long established that "[t]he Equal Protection Clause relates to

equality between persons as such rather than between areas," *id.* at 551, 74 S.Ct. at 283, and stated:

> There seems to be no doubt that Maryland could validly grant home rule to each of its 23 counties and to the City of Baltimore to determine this rule of evidence by local option. It is equally clear, although less usual, that a state legislature may itself determine such an issue for each of its local subdivisions, having in mind the needs and desires of each. Territorial uniformity is not a constitutional requisite.

*Id.* at 552, 74 S.Ct. at 284. (footnote deleted). Noting Maryland's policy of legislating local laws through its General Assembly, the Court found the legislative classification to be reasonable. *Id.* at 552–53, 74 S.Ct. 280. Subsequently, in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Court, relying upon *Salsburg,* found no invidious discrimination in a Maryland criminal statute permitting Sunday sales of certain items by Anne Arundel County retailers but prohibiting such sales elsewhere. 366 U.S. at 427, 81 S.Ct. 1101.

 Thus, the Supreme Court "has never questioned the State's power to draw reasonable distinctions between political subdivisions within its borders." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 28 n.66, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). As discussed above, the Court has upheld a number of state territorial classifications, finding them to have been reasonable exercises of a state's power. *See also Fay v. New York,* 332 U.S. 261, 270–72, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); *United States ex rel. Buonoraba v. Commissioner of Correction,* 316 F.Supp. 556, 564–66 (S.D.N.Y.1970); *cf. Manes v. Goldin,* 400 F.Supp. 23, 29–30 (E.D.N.Y. 1975) (three-judge court), *aff'd,* 423 U.S. 1068, 96 S.Ct. 851, 47 L.Ed.2d 80 (1976). In none of these cases was it suggested that the classification at issue must be justified by a compelling state interest, and the court finds no reason here to require the state to make such proof. There is no "fundamental right" to treatment as a juvenile rather than an adult offender "explicitly or implicitly guaranteed by the Constitution." *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 33–34, 93 S.Ct. at 1297. As *North v. Russell, supra,* and the other cases discussed previously make clear, the mere fact that the classification impacts upon the criminal trial or appellate processes is insufficient to require a strict scrutiny analysis. Such cases as *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); and *Richards v. Townsend,* 303 F.Supp. 793 (N.D.Cal.1969), *aff'd as modified,* 444 F.2d 528 (9th Cir. 1971), cited by petitioner, all involved indigency and basic access to the criminal appellate process. *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), implicated the fundamental civil rights of marriage and procreation, *id.* at 541, 62 S.Ct. 1110. In none of the cases was the classification at issue grounded on a territorial distinction created by the state. Petitioner also argues that the classification adversely affects his fundamental right to vote because the right to vote is denied to persons convicted of certain crimes, Md.Const. art. I, § 2; *Annotated Code of Maryland* art. 33, § 3–4(c) (1976), but not to juvenile offenders, *Annotated Code of Maryland,* Cts. & Jud.Proc. art. § 3–824(a) (Cum.Supp.1977). However, the court finds the relationship between the territorial classification attacked here and the impact of petitioner's conviction upon his right to vote to be too attenuated to require strict scrutiny of the classification. *See Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The classification does not affect directly the right to vote as was true in *Clayton v. North Carolina State Board of Elections,* 317 F.Supp. 915, 920–21 (E.D.N.C. 1970) (three-judge court).

 For these reasons the court concludes that the Maryland juvenile statutes challenged by the petitioner violate the equal protection clause only if the classifica-

tion created lacks any rational basis. The classification will be upheld "if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland, supra,* 366 U.S. at 426, 81 S.Ct. at 1105. In *Long v. Robinson,* 316 F.Supp. 22 (D.Md.1970), *aff'd,* 436 F.2d 1116 (4th Cir. 1971), then Chief Judge Watkins of this court found no such rational basis for a Maryland statutory provision creating territorial classifications between juvenile offenders in Baltimore City and elsewhere. The statute challenged in that case defined a child for the purpose of the juvenile offender statutes generally as a person under the age of eighteen but in Baltimore City as a person under the age of sixteen. The court found no justification whatsoever for charging sixteen and seventeen year olds arrested for offenses committed in the city as adults while treating similar persons who committed offenses elsewhere as juveniles.

In this case the court concludes that the classification challenged by the petitioner, unlike that struck down in *Long,* has a reasonable basis sufficient to satisfy the requirements of the equal protection clause. In the first instance the court notes that the differentiation between juveniles in Montgomery County and elsewhere established by the statutory provisions at issue here is not nearly as stark as the distinction challenged in *Long.* The statutory provision considered in *Long* was an absolute definition to which there was no exception. Under the armed robbery statute challenged here, a juvenile who committed armed robbery in Montgomery County was considered initially as a juvenile offender, while one who committed armed robbery elsewhere in the state was treated as an adult. However, the Montgomery County youth could then be tried as an adult offender if the juvenile court waived its jurisdiction. *Annotated Code of Maryland, Cts. & Jud.Proc.* art. § 4–506 (1974). On the other hand, in accordance with a "reverse waiver" provision, the case of a youth charged as an adult, such as the petitioner, could under certain circumstances be transferred to the juvenile court. *Annotated Code of Maryland, Cts. & Jud.Proc.* art.

§ 3–808(4) (1974); *Annotated Code of Maryland* art. 27, § 594A (1976). Thus, the difference, although existent, is not absolute. Similarly, the difference between the right to an interlocutory appeal of a juvenile court order and the requirement that appeals be taken only from final orders is a distinction, but not an absolute denial of a right to appeal.

Significantly, the statute challenged in *Long* singled out youths charged in one political subdivision of the state, Baltimore City, for treatment more harsh than that afforded all other young offenders in the state. The circumstances of this case present a reverse situation. Petitioner attacks the statutes considered here on the ground that they provided greater rights to youths in a single subdivision than they did to all others, the majority of youthful offenders, of which he was a member. As pointed out by the Court of Appeals of Maryland, Montgomery County has long had a separate juvenile law governing the disposition of juvenile offenses. *In re Trader, supra,* 325 A.2d at 417. The State of Maryland reasonably could have determined to allow variations in juvenile procedure in Montgomery County as an experiment. "Criminal law provides a long-established field for such legislative discretion." *Salsburg v. Maryland, supra,* 346 U.S. at 553, 14 S.Ct. at 285 (footnote omitted). As noted previously, in the past three years the State General Assembly has made Montgomery County subject to the general armed robbery provision, whereas all juvenile offenders now enjoy the same right to interlocutory appeals formerly held only by Montgomery County youths. The court concludes that the Maryland statutes challenged by petitioner are "within the liberal legislative license allowed a state in prescribing rules of practice . . . relating to its police power," *Salsburg v. Maryland, supra,* 346 U.S. at 550, 74 S.Ct. at 282, and are not in violation of the equal protection clause.

Accordingly, it is this 27th day of September, 1978, by the United States District Court for the District of Maryland ORDERED that the petition for a writ of habeas corpus be, and hereby is, DENIED.

The court expresses its appreciation to George W. Johnston for his able efforts in representing the petitioner.