Alan Keith FRANCIS, Appellant,

v.

STATE OF MARYLAND and Dr. Harold M. Boslow, Appellees.

No. 78–6566.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1979.

Decided Sept. 19, 1979.

George W. Johnston, Baltimore, Md. for appellant.

Donald R. Stutman, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Maryland, Baltimore, Md., on brief), for appellees.

Before HALL and PHILLIPS, Circuit Judges, and EDWARD DUMBAULD, Senior District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

K. K. HALL, Circuit Judge:

Alan Keith Francis, a Maryland prisoner, appeals the district court's denial of his petition for a writ of habeas corpus, alleging that the statutory scheme under which he was convicted violates his fourteenth amendment right of equal protection of the laws. We disagree and affirm.

In 1974, when he was under the age of eighteen, appellant was charged in Baltimore City in adult criminal court with arm-

ed robbery and in juvenile court with unauthorized use of a motor vehicle. Juvenile court waived jurisdiction and he pleaded guilty in adult court to both charges. At that time, juvenile court jurisdiction in Maryland was set by two statutory schemes, one with statewide application, Annotated Code of Maryland, Cts. & Jud. Proc. art. §§ 3–801 to 3–842 (1974) and one which applied to only one county of the state, Montgomery County. *Id.,* §§ 4–501 to 4–530.

Appellant argues that, if he had committed the acts giving rise to his adult guilty pleas in Montgomery County rather than in Baltimore City, he might have realized more favorable treatment as a juvenile. In particular, he contends he was denied equal protection in two ways. First, a juvenile his age would have been charged with both offenses in juvenile court, and the state, as the moving party, would have had the burden of effecting a waiver of jurisdiction to adult court on both charges. *See Kennedy v. State,* 21 Md.App. 234, 240, 319 A.2d 850 (1974). Second, in Montgomery County, juveniles had the right to take an immediate interlocutory appeal from a Montgomery County juvenile court's order waiving jurisdiction; whereas, any attempt by him in Baltimore City to appeal his removal to adult court on the unauthorized use charge would have had to wait until appeal from his adult conviction. *See Matter of Trader,* 272 Md. 364, 370–71, 325 A.2d 398 (1974). He contends the statutes establishing such disparate treatment of juveniles in Maryland's territorial subdivisions have denied him his right of equal protection.[1]

Such arguments are not new and are uniformly rejected where the territorial distinctions serve some state interest and all people in the different jurisdictions are afforded equal treatment under the laws applicable in those jurisdictions. *Missouri v. Lewis,* 101 U.S. 22, 25 L.Ed. 989 (1880). As the Supreme Court acknowledged in *Salsburg v. State of Maryland,* 346 U.S. 545, 551, 74 S.Ct. 280, 283, 98 L.Ed. 281 (1954),

"[T]here is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. * * * It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." [*Missouri v. Lewis,* 101 U.S. at 31 [25 L.Ed. 989]]

More recently, the Court approved this analysis in *North v. Russell,* 427 U.S. 328, 339, 96 S.Ct. 2709, 2714, 49 L.Ed.2d 534 (1976), again quoting the *Lewis* Court:

"Each State . . . may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. *Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right."* [*Missouri v. Lewis,* 101 U.S. at 30–31 [25 L.Ed. 989]] (emphasis added)

The district court rejected appellant's arguments in a thoughtful opinion. *Francis v. Maryland,* 459 F.Supp. 163 (D.Md.1978). As discussed by the district court, a state's power to draw reasonable distinctions between its subdivisions includes the power to affect important substantive and procedural rights.[2]

---

1. The two territorial distinctions here attacked have been eliminated. *See Francis v. Maryland,* 459 F.Supp. 163, 166 (D.Md.1978).

2. The Supreme Court has upheld state statutes involving territorial distinctions which affected

a criminal defendant's right to trial by lawyers or lay judges, varying levels of appellate review and evidentiary suppression rules. *See Francis v. Maryland,* 459 F.Supp. at 167–68.

We adopt for our decision here the district court's opinion on the various issues raised and write only to discuss one point which appellant argues vigorously on appeal. He argues that, notwithstanding the foregoing general authority, the decision in *Long v. Robinson,* 316 F.Supp. 22 (D.Md. 1970) *affd.* 436 F.2d 1116 (4th Cir. 1971), is indistinguishable and requires reversal of the district court's decision. We cannot agree.

In *Long v. Robinson,* we struck down two Maryland statutes defining juveniles by an age different in Baltimore City from that of the rest of the state. As definitional statutes, they swept broadly. Any person under eighteen was treated as a juvenile in all parts of the state except Baltimore where juvenile status ended with the juvenile's sixteenth birthday. The statutory distinction turned on age rather than conduct, with irrational results. Two of the three named plaintiffs were charged as adults for drunkenness and disorderly conduct. The third, a sixteen-year old, was charged with the felony of receiving stolen property for what appeared to be a relatively innocuous incident observed by his teacher at school.

If the plaintiffs in *Long* had been charged anywhere in Maryland other than Baltimore City, they would have been treated as juveniles, in a manner appropriate to the special needs of their youth. But their age alone gave them an adult criminal status in Baltimore City. In *Long,* the full range of all possible juvenile conduct was a matter for adult criminal courts. Young people were routinely "booked" and held with adult offenders pending bail. If convicted, they were incarcerated in adult institutions away from necessary juvenile services. This special treatment was visited upon juveniles in one locality of a state where the legislative judgment for the whole of the state was contrary—sixteen- and seventeen-year olds deserved the social service treatment available to younger juveniles. No rational basis could be found for such a harsh exception to the state's generally favorable treatment of juveniles.

Here, the problem is different in every particular. Maryland juvenile status is now enjoyed by all persons in the state until age eighteen, for all juvenile misbehavior which is indicative of youth generally. At issue, however, is the legislative judgment that throughout the state older juveniles, ages sixteen and seventeen, who commit certain violent crimes should not be afforded the initial beneficial treatment allowed to younger juveniles be being charged in juvenile court. Specifically, this judgment says that armed robbery by older juveniles should be treated as adult criminal behavior statewide, unless on a case-by-case basis, the juvenile can show he should be sent to juvenile court.

This limited legislative judgment has a territorial exception applicable in one county where the legislature has also determined that a detailed, special scheme for juvenile court jurisdiction is appropriate. This special scheme affords juveniles the special procedural right of interlocutory appeal from waiver of juvenile court jurisdiction. These two legislative judgments pose what appellant contends is a denial of equal protection.

The district court found the territorial distinctions to be within the legislative prerogative afforded by the equal protection clause. The separate juvenile court schemes were found to indicate an experimental purpose because the exceptional treatment was beneficial to juveniles whereas the exceptional treatment considered in *Long* was very harsh and imposed only in one locality.

In light of such a reasonable purpose, common to our federal system as a whole, we agree with the district court that appellant has failed in his burden of showing that the limited disparity of treatment afforded juveniles in Maryland's subdivisions is unreasonable.

750

■ Furthermore, we think appellant's equal protection challenge is, in substance, a claim that the treatment allowed in one jurisdiction should be the statewide rule. But it is well accepted in our federal system that states may experiment in their statewide programs from jurisdiction to jurisdiction, and they may allow special home rule in their subdivisions.[3] The special juvenile court jurisdiction created for Montgomery County is just such a permissible legislative determination, which fails, in any particular here attacked, to rise to the level of a deprivation of fourteenth amendment rights.

■ In conclusion, we are not so far along in our development of a national identity, uniform laws and perhaps a unified government that state distinctions between her political subdivisions can be held unconstitutional simply because different benefits may flow to individuals in those various subdivisions. The legislative judgments at issue here are reasonable, and accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*

---

**3.** Maryland's system of legislating home rule in her counties by state statute has been upheld by the Supreme Court. *Salsburg v. State of Maryland*, 346 U.S. at 552, 74 S.Ct. 280.