960 F.2d 110
 22 Envtl. L. Rep. 20,947
 COLUMBIA RIVER GORGE UNITED-PROTECTING PEOPLE AND PROPERTY,
Plaintiff-Appellant,
v.
Clayton K. YEUTTER, Secretary of Agriculture of the United
States; COLUMBIA RIVER GORGE COMMISSION,
Defendants-Appellees,
FRIENDS OF THE COLUMBIA GORGE, INCORPORATED,
Defendant-Intervenor-Appellee.
 No. 90-35588.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 10, 1991.
Decided March 30, 1992.
 
 James S. Burling, Pacific Legal Foundation, Sacramento, Cal., for plaintiff-appellant.
 Robert Klarquist, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee Yeutter.
 Dave Frohnmayer, Atty. Gen., Michael Reynolds, Asst. Sol. Gen., State of Or., Salem, Or., James Johnson, Sr. Asst. Atty. Gen., Lawrence Watters, Asst. Atty. Gen., State of Wash., for defendants-appellees Columbia Gorge.
 Victor M. Sher, Sierra Club Legal Defense Fund, Inc., Seattle, Wash., for defendant-intervenor-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before GOODWIN, SCHROEDER and NOONAN, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is an action challenging the constitutionality of the Columbia River Gorge National Scenic Area Act, 16 U.S.C. §§ 544-544p which was enacted in 1986. Its purposes were to protect the economy and enhance the scenic, cultural, recreational and natural resources of the Columbia River Gorge. The Gorge occupies a uniquely beautiful and rich area in Oregon and Washington bordering the Columbia River. The Act contemplated interim management of the area by the Secretary of Agriculture and long-term management by the Columbia Gorge Commission, an agency to be established by a compact between the two states. 16 U.S.C. § 544c. The Act set forth in some detail the manner in which the Commission was to function and conditioned Congress' consent to the Compact upon compliance with those conditions. The Compact has now been entered into and the Commission is functioning according to the plan outlined in the Act.
 
 
 2
 The plaintiffs in this action, individual property owners, an organization called the "Columbia Gorge United-Protecting People and Property," and members of that organization, claimed they were adversely affected by the operation of the Commission. They sued both the Secretary of Agriculture and the Commission alleging that the Act violated both the Federal and State Constitutions. Following a hearing on the merits, the district court granted summary judgment in a thoughtful opinion rejecting all of the plaintiffs' claims. Columbia River Gorge United is the sole appellant in this action, as it is the only party below that listed its name on the notice of appeal, thereby complying with the specificity requirement of Fed.R.App.P. 3(c). See Benally v. Hodel, 913 F.2d 1464, 1467 (9th Cir.1990). In this appeal Columbia River Gorge United renews its contentions that the Act violates the United States Constitution, alleging specifically that the Act violates the Tenth Amendment, the Commerce, Property and Compact Clauses and the Fifth Amendment entitlement to equal protection.
 
 
 3
 Underlying all of appellant's contentions is the recurring theme that the Act and the Compact are contrary to the true wishes of the states of Oregon and Washington, and that the states were coerced into accepting conditions laid down by Congress. The Commission in this case is represented by the Attorneys General of both states who vigorously maintain that both the Act and the Compact were a product of mutual cooperation between federal and state governments to achieve a result satisfactory to both states. To the extent that appellant's arguments rest upon issues of fact with respect to coercion, they have been resolved against the plaintiffs by the district court in findings which are not clearly erroneous. We therefore deal only with issues of law.
 
 OPERATION OF THE ACT
 
 4
 The Act establishes a "partnership between the Federal Government, the States of Oregon and Washington, and the nearly 50 units of local government within the Columbia River Gorge for the purpose of protecting and enhancing" property and resources within the Gorge. 132 Cong.Rec. 29496 (Oct. 8, 1986) (remarks of Senator Hatfield). The Act accomplishes this goal by creating the Columbia River Gorge National Scenic Area and ratifying an interstate compact between Washington and Oregon which regulates land use and development activities within the Scenic Area.
 
 
 5
 The Act calls for the creation of a thirteen member Commission composed of three residents appointed by the three Oregon Gorge counties, three residents appointed by the three Washington Gorge counties, three members appointed by each state governor and one non-voting Forest Service employee appointed by the Secretary of Agriculture. 16 U.S.C. § 544c. Once created, the Commission is charged with the development of a management plan that regulates, through land use ordinances, the development and use of various categories of land within the Scenic Area. In furtherance of this purpose, the Commission is, within the first year of its establishment, to complete a resource inventory, an economic opportunity study, and a recreational assessment of the Scenic Area. 16 U.S.C. § 544d(a). Within two years the Commission is to complete land use designations for privately owned land within the Scenic Area. 16 U.S.C. § 544d(b). The Secretary of Agriculture will, during this same period, take corresponding steps with respect to federally owned land within the Scenic Area. 16 U.S.C. § 544f.
 
 
 6
 Once these tasks are accomplished, the Commission is to develop and adopt a management plan for the Scenic Area. Under the Act, the Plan must include land use designations, management direction for the use of federal land, and guidelines for adoption of land use ordinances. After the Plan is approved by the Secretary of Agriculture, counties will be instructed to submit land use ordinances to the Commission for approval. If a county fails to submit an acceptable plan, the Commission is authorized to develop and implement a county plan that is consistent with the overall management plan.
 
 
 7
 Under the Act, and the resulting Compact, all land use within the Columbia River Gorge Scenic Area, whether private, federal or local, will be consistent with the management plan developed by the Commission. Congressional consent to this interstate compact is expressly contingent upon inclusion in the Compact of all powers and responsibilities assigned to the Commission under the Act. 16 U.S.C. § 544o(d).
 
 
 8
 The Columbia River Gorge Compact was ratified by Oregon and Washington in 1987. The Compact incorporated the Gorge Act and established the Commission in accordance with the federal statute. Or.Rev.Stat. § 196.150 (1987); Wash.Rev.Code § 43.97.020 (1987).
 
 DISCUSSION
 
 9
 We deal first with the appellant's contentions that the Act violates the authority granted to Congress in both the Commerce and Property Clauses of the Constitution and is therefore outside the scope of the legislative power granted to Congress by the United States Constitution.
 
 
 10
 The Commerce Clause, Article I, section 8, of the Constitution provides that Congress "shall have Power ... to regulate Commerce with foreign Nations and among the several States." The Clause has, of course, been interpreted expansively to authorize regulation not only of channels and instrumentalities of interstate commerce but of "activities affecting commerce." See, e.g., Hodel v. Virginia Surface Mining and Reclamation Ass'n, 452 U.S. 264, 276-277, 101 S.Ct. 2352, 2360-61, 69 L.Ed.2d 1 (1981). Similarly, activity that is seemingly insignificant may be regulated where one individual's "contribution, taken together with that of many others similarly situated, is far from trivial." Wickard v. Filburn, 317 U.S. 111, 127-28, 63 S.Ct. 82, 90-91, 87 L.Ed. 122 (1942). The district court correctly disposed of appellant's contention that the Act goes beyond this expansive power.
 
 
 11
 The district court found, and appellant does not dispute, that among Congress' concerns was a desire to preserve the beauty of the area for those who would travel to use the rivers and mountains in it for recreation, thus directly causing interstate travel. Congress also intended to regulate competing economic activities within the scenic area that are activities directly affecting interstate commerce. These activities include logging and fishing. Moreover, and perhaps most important, the area itself is unique in that it consists of portions of two states bisected by a navigable waterway. In such an area, virtually all activities affecting the land, the economy, the environment, or the resources have interstate ramifications. See United States v. Appalachian Elec. Power Co., 311 U.S. 377, 426, 61 S.Ct. 291, 308, 85 L.Ed. 243 (1940) (Congressional authority to regulate rivers is not limited to control for navigation, but is as broad as the needs of commerce and extends to flood protection, watershed development, and the recovery of cost of improvements). See also Boone v. U.S., 944 F.2d 1489, 1492-93 (9th Cir.1991) (federal government's authority to regulate navigable waters is coextensive with and parallel to expansive power to regulate commerce generally). Interstate bodies of water are frequently the subject of interstate compacts. See, e.g., Tahoe Regional Planning Compact, Pub.L. No. 91-148, 83 Stat. 360 (1969); Delaware River Basin Compact, Pub.L. No. 87-328, 75 Stat. 688 (1961); Upper Colorado River Basin Compact, 63 Stat. 31 (1949). There is thus no merit to the appellant's claim on appeal that by upholding the constitutionality of the Compact, we are upholding the authority of Congress to impose zoning regulations throughout the country. As the district court noted, Congress found this area to be one of critical national significance.
 
 
 12
 Appellant also contends that the Act goes beyond the grant of authority to Congress under the Property Clause of the Constitution which provides that Congress has power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const., art. IV, § 3, cl. 2. Appellant argues that even though some seventeen percent of the land in the affected area is federally owned, Congress may not regulate development in the entire area. The district court agreed with appellees that development on non-federally owned land has a sufficient effect on federally owned land to justify regulation of such development under the Property Clause. They relied upon Supreme Court decisions which upheld federal regulation of non-federal land where the regulated activity on the non-federal land affected the activities on the federal land. See Kleppe v. New Mexico, 426 U.S. 529, 538, 96 S.Ct. 2285, 2291, 49 L.Ed.2d 34 (1976); Camfield v. United States, 167 U.S. 518, 525-26, 17 S.Ct. 864, 867-67, 42 L.Ed. 260 (1897). In addition, the United States points out that it is difficult to see how the entire Act could be struck down by an attack on only those portions affecting non-federal land, since the Act has a severability clause. We need not determine, however, whether all or a portion of the Act would go beyond the reach of Congress' power under the Property Clause. We have already determined that the Act is within Congress' power under the Commerce Clause.
 
 
 13
 For a similar reason, the Act cannot be a violation of the Tenth Amendment. Since the Act is within the powers granted to Congress under the Commerce Clause, it cannot constitute an exercise of a power reserved to the states. We therefore need not address the federal government's position that the appellant lacks standing to assert the rights of the states under the Tenth Amendment.
 
 
 14
 We then turn to the appellant's contention that the regulatory system is a product of a compact that is not valid under the Compact Clause. Under the Compact Clause, U.S. Const., art. I, § 10, cl. 3, any interstate agreement that increases the political power of states must be approved by Congress. "The relevant inquiry must be one of impact on [the] federal structure." United States Steel Corp. v. Multistate Tax Comm'n., 434 U.S. 452, 471, 98 S.Ct. 799, 812, 54 L.Ed.2d 682 (1978). All parties to this appeal agree that the Compact between Washington and Oregon, pursuant to which the Commission was established to oversee the Columbia River Gorge Area, is one which requires such congressional consent. Through the Act, Congress consented in advance to this Compact on the condition that the Compact contain certain specific provisions. Advance consent with requirements attached is itself perfectly valid, as the Supreme Court has held. Cuyler v. Adams, 449 U.S. 433, 440-41, 101 S.Ct. 703, 707-08, 66 L.Ed.2d 641 (1981). This court has recently reaffirmed that Congress may condition consent upon a compact containing specific terms, including the creation of a compact agency. See Seattle Master Builders v. Pacific N.W. Elec. Power, 786 F.2d 1359, 1364 (9th Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987).
 
 
 15
 The only distinction between Seattle Master Builders and this case is the appellant's assertion that this Act specifies in greater detail the provisions of the Compact it authorizes than the Pacific Northwest Power Planning and Conservation Act at issue in Seattle Master Builders. The fundamental objection to both this Compact and that in Seattle Master Builders, however, is essentially the same. Moreover, there are distinct benefits from the kind of detailed advance planning between states and the federal government that led to this Compact. Such planning is fully consistent with the purpose of the Compact Clause. Regional arrangements may represent a necessary method for handling problems, such as transportation, waste disposal and environmental preservation, which because of their interstate nature cannot be handled by individual states acting alone. Professors Landis and Frankfurter, in their seminal article on the Compact Clause, strongly recommended the Compact device for "fashioning new instruments adapted to new situations." Frankfurter & Landis, The Compact Clause of the Constitution--A Study in Interstate Adjustments, 34 Yale L.J. 685, 688 (1925). Foresighted in their thinking, the authors understood that "imaginative adaptation of the compact idea should add considerably to resources available to statesmen in the solution of problems presented by ... growing interdependence." Id. at 729. As we pointed out in Seattle Master Builders, the compact has been used in a variety of unique situations to promote both state and federal interests: "An unusual feature of a compact does not make it invalid." Seattle Master Builders, 786 F.2d at 1364. The Columbia River Gorge Compact is just such an innovative solution to a difficult interstate land preservation problem.
 
 
 16
 The appellant finally contends that the Act violates the Fifth Amendment entitlement to equal protection because Gorge area residents must submit to local land use decisions made by non-elected officials, while state residents outside the Gorge area are subject to land use regulation only by elected officials. Insofar as the appellant argues that the Act violates electoral rights guaranteed by the state constitutions or local laws, this challenge fails. When Congress, acting within constitutional limits, creates federal law, state law is nullified to the extent that compliance with both the federal and the state law would be a physical impossibility. Hillsborough County, Fla. v. Auto Med. Labs., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).
 
 
 17
 The equal protection challenge lodged by the appellant is based upon geographic discrimination. Residents outside the Gorge area get to vote for their land-use planners, while those inside the Gorge area do not. The equal protection clause, however, is not violated when a geographic area is singled out for different treatment. The Supreme Court has held that "there is no rule that counties, as counties, must be treated alike; the Equal Protection Clause relates to equal protection of the laws 'between persons as such rather than between areas.' " Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 230, 84 S.Ct. 1226, 1233, 12 L.Ed.2d 256 (1964) (quoting Salsburg v. Maryland, 346 U.S. 545, 551, 74 S.Ct. 280, 283, 98 L.Ed. 281 (1954)). Different treatment of different areas is permissible, provided there are reasons for such treatment that do not reflect unconstitutional motivations. Griffin, 377 U.S. at 231, 84 S.Ct. at 1233. Preservation of the Columbia River Gorge Area is a permissible Congressional objective and a valid exercise of the power delegated to Congress under the Commerce Clause of the Constitution.
 
 
 18
 AFFIRMED.