STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
SIMONE SENNO, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RALPH L. KENNY, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOHN BUONURA, DEFENDANT-APPELLANT.

Argued May 23, 1978—Decided February 27, 1979.

*Mr. Alan Silber* argued the cause for appellants Senno and Kenny and for *amicus curiae* American Civil Liberties Union (*Mr. Bert Binder,* attorney for defendant Senno; *Mr. Alan Silber,* attorney for defendant Kenny and *amicus curiae* in *State v. Senno*).

*Mr. G. Robert Wills* argued the cause for appellant Buonura (*Messrs. Strauss, Wills and Baxendale,* attorneys).

*Mr. Gary H. Schlyen,* Assistant Prosecutor, argued the cause for respondent in *State v. Senno* (*Mr. Burrell Ives Humphreys,* Prosecutor, attorney).

*Mr. Paul A. Massaro,* Assistant Prosecutor, argued the cause for respondent in *State v. Kenny* (*Mr. John H. Stamler,* Prosecutor, attorney; *Mr. Massaro* and *Ms. Susan M. Scarola,* Assistant Prosecutors, on the brief).

*Mr. Lewis N. White, III,* Assistant Prosecutor, argued the cause for respondent in *State v. Buonura* (*Mr. Richard S. Rebeck,* Prosecutor, attorney).

*Mr. Alan Dexter Bowman,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey in *State v. Senno* and *State v. Buonura* (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Bowman* and *Ms. Janice S. Mironov,* Deputy Attorneys General of counsel and on the briefs; *Mr. David S. Baime,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

MOUNTAIN, J. The defendants in each of these three cases stand charged with the commission of a nonindictable offense.

Defendant Senno was accused of shoplifting in violation of *N. J. S. A.* 2A:170–97. A person convicted of this offense is a disorderly person. *N. J. S. A.* 2A:170–98. Defendant Kenny was accused of three offenses: unlawful taking, receiving and possessing stolen property valued at less than $200 in violation of *N. J. S. A.* 2A:170–41.1; possession of a hypodermic syringe in violation of *N. J. S. A.* 2A:170–77.5; and possession of less than 25 grams of marijuana in violation of *N. J. S. A.* 24:21–20a(4). Conviction of each of these offenses renders a defendant a disorderly person. *N. J. S. A.* 2A:170–41.1; 2A:170–77.6; 24:21–20a(4). Defendant Buonura was charged with operating a motor vehicle while under the influence of alcohol in violation of *N. J. S. A.* 39:4–50(a). This is a motor vehicle violation.

In each instance, the pretrial intervention (PTI) program in the county where the infraction occurred limits eligibility for entry into the program to persons who have been charged with indictable offenses. Each of these defendants has been excluded from the PTI program to which he or she applied because the offenses with which they are respectively charged do not fall within this classification. The initial issue raised by these appeals, then, is whether such a limitation comports with our rule of court, *R.* 3:28, and accompanying Guidelines.[1] If it is determined that it does, each defendant further argues (1) that there is a violation of equal protection in that a classification which limits eligibility to those charged with indictable offenses is con-

---

[1]Presently, county PTI programs operate under the aegis of this Court's rulemaking authority. It should be noted, however, that the New Jersey Code of Criminal Justice, *L.* 1978, *c.* 95, to be codified at *N. J. S. A.* 2C:1–1 to :98–4, presently at 4 *N. J. Sess. Laws* 1978, was enacted into law August 16, 1978 and is to become effective September 1, 1979. The new code contains provisions dealing with pretrial intervention. *N. J. S. A.* 2C:43–12 to :43–22. Because this statutory material is not yet in effect, and may conceivably be revised before becoming effective, we deem it inappropriate to comment upon it at this time.

stitutionally impermissible; and (2) that to admit those charged with nonindictable offenses to a PTI program in certain counties but not in others similarly results in an equal protection deprivation.

We conclude that neither *Rule* 3:28, the Guidelines nor the Constitution requires that the opportunity for diversion from the conventional criminal justice system, via PTI, be made available to those charged with nonindictable offenses.

In New Jersey, whether a person charged with an offense is entitled to the protections afforded by indictment depends on whether the offense with which the person is charged is criminal. *See N. J. Const.* (1947), Art. I, ¶ 8. Misdemeanors and high misdemeanors are classified as crimes and proceedings against persons charged with such offenses must be by way of indictment. *In re Buehrer,* 50 *N. J.* 501, 517 (1967). In contrast, disorderly persons offenses and motor vehicle violations are considered petty offenses. *N. J. S. A.* 2A:169–4; *State v. Macuk,* 57 *N. J.* 1, 9 (1970). Although certainly *penal* in nature, infractions which fall "within the generic category of 'petty offenses'" are not, strictly speaking, criminal in nature, and, because the direct and collateral consequences of conviction are more "limited," those so charged may be tried without indictment. *In re Buehrer, supra,* 50 *N. J.* at 518. This distinction between indictable and nonindictable offenses has been a longstanding one in the jurisprudence of our State. *See generally State v. Maier,* 13 *N. J.* 235 (1953).

A careful examination of *Rule* 3:28 and the accompanying Guidelines leads to certain relevant conclusions. First, as is set forth in a statement prefatory to the Guidelines, "every defendant who has been accused of any *crime* shall be eligible for admission into a PTI program." (Emphasis added). Substantially the same statement appears in Guideline 2 and in Guideline (3)(i). Thus anyone charged with an indictable offense is obviously eligible. No PTI program can make an exception to this rule.

Although not as obvious, it is also certain that the Rule and Guidelines contemplate that a program *may* make provision for the inclusion of persons charged with nonindictable offenses or specified types of such offenses. *Rule* 3:28(b) speaks of eligibility where a defendant has been charged "with a *penal* or criminal offense." Similarly, Guideline 3(c) indicates clearly that defendants "charged with criminal or *penal* offenses" may be enrolled in a PTI program. (Emphasis added). Furthermore, Guidelines 6 and 7 lay down procedures to be followed only in the case of an "indictable offense," a limitation that would not be necessary were nonindictable offenses never to be considered. Finally, Guideline 1(e) states that one of the purposes of pretrial intervention is "to deter future criminal or *disorderly behavior* by a defendant/participant in pretrial intervention." (Emphasis added). The foregoing examination makes it apparent that *Rule* 3:28 and the Guidelines were intended to be permissive with respect to the inclusion of nonindictable offenses in county PTI programs. Accordingly, they should be read to say that while a program need not make provision for persons accused of nonindictable offenses, it may nevertheless do so.

It is, of course, true that in *State v. Leonardis,* 71 *N. J.* 85 (1976), *reaff'd on rehearing,* 73 *N. J.* 360 (1977), this Court expressly disapproved the employment of exclusionary PTI eligibility criteria based "solely on the nature of [the] crime" charged. 71 *N. J.* at 102. We there found that the categorical exclusion of persons charged with crimes classified as "heinous" placed unwarranted emphasis on the offense while ignoring other factors more directly related to the underlying purposes of PTI. *Id.* at 111–12. We, therefore, directed that county PTI programs be modified to provide for the consideration of "[d]efendants who have been accused of *any* crime." *Id.* at 121. (Emphasis in original).

The defendants presently before the Court urge that the language of the *Leonardis* decision be read expansively to invalidate the blanket exclusion of nonindictable offenses, a

categorical exclusion not considered in that case. While we do not wish to be understood as encouraging the *per se* exclusion of persons charged with petty offenses from eligibility for admission to PTI, we recognize, as we did in *Leonardis, supra,* that certain deficiencies "are the attendant by-products of a program which is still experimental in nature." 71 *N. J.* at 120. Flexibility of approach must be retained. For the present, PTI programs continue to be administered at the county level and the availability of the necessary resources varies accordingly. Although the implementation of perfectly uniform and enlightened admissions criteria is a goal worthy of continuous pursuit, considerations of policy must be tempered with pragmatism. We are unwilling to jeopardize the salutary results presently being achieved through PTI by mandating the sort of expansion of all county programs that wholesale inclusion of nonindictables would entail. Whether to include nonindictable offenses is a decision currently to be made by each county, subject to approval by this Court.

Having reached this interpretation of the Rule and Guidelines, it becomes necessary to address defendants' equal protection contentions. There are two aspects to these claims: First, that it is unconstitutional to extend PTI to indictable offenses and not to nonindictable offenses, and second, that it is unconstitutional to extend PTI to nonindictable offenses only in certain counties.

Under the "two tier" test employed by the United States Supreme Court to review equal protection challenges to classifications under the Fourteenth Amendment,

[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. [*New Orleans v. Dukes,* 472 *U. S.* 297, 303, 96 *S. Ct.* 2513, 2517, 49 *L. Ed.* 2d 511, 517 (1976)]

Thus we must first determine whether there should be applied a "compelling state interest" test or only the less rigid "rational basis" test. To require that the classification be scrutinized under the "compelling state interest" test, it either must be suspect in the constitutional sense or involve a fundamental right.

▮▮▮▮ A suspect category in the classification is revealed when

... the class is . . . saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. [*San Antonio School Dist. v. Rodriguez*, 411 *U. S.* 1, 28, 93 S. Ct. 1278, 1294, 36 *L. Ed.* 2d 16, 40 (1973)]

A suspect category is likewise based on an "immutable characteristic determined solely by the accident of birth." *Frontiero v. Richardson*, 411 *U. S.* 677, 686, 93 *S. Ct.* 1764, 1770, 36 *L. Ed.* 2d 583, 591 (1973) (plurality opinion). Based on these definitions, the class here present, composed of defendants accused of nonindictable offenses, is not suspect. *See also United States v. Harris*, 537 *F.* 2d 563, 564 (1st Cir. 1976) (class based on status as felon not suspect as that characteristic not determined by birth); *Marshall v. Parker*, 470 *F.* 2d 34, 38 (9th Cir. 1972), *aff'd sub nom.*, *Marshall v. United States*, 414 *U. S.* 417, 94 *S. Ct.* 700, 38 *L. Ed.* 2d 618 (1974) (class based on status as felon with two or more convictions for purpose of exclusion from rehabilitation program not suspect).

▮▮▮▮ Nor are we here concerned with a fundamental right or interest. Such a right is defined as one "explicitly or implicitly guaranteed by the [federal] Constitution." *San Antonio School Dist. v. Rodriguez, supra,* 411 *U. S.* at 33, 93 *S. Ct.* at 1297, 36 *L. Ed.* 2d at 43. This Court has recognized that PTI implicates important interests, *State v. Leonardis, supra,* 71 *N. J.* at 117, and that, although a defendant will suffer no loss of liberty by merely being denied

entry, PTI must be operated in a nonarbitrary manner. *State v. Leonardis, supra,* 73 *N. J.* at 378. This does not, however, elevate PTI to the status of a fundamental right.

The classifications at issue in this case may therefore be reviewed under the rational basis test. Where this is so, a state has wide discretion in promulgating criteria for program eligibility. Thus such criteria will not be deemed constitutionally infirm unless wholly unrelated to the purposes underlying the program of pretrial intervention:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [*McGowan v. Maryland,* 366 *U. S.* 420, 425–6, 81 *S. Ct.* 1101, 1105, 6 *L. Ed.* 2d 393, 399 (1961)]

Parenthetically it should be noted that what is said immediately above with respect to legislative action applies equally to judicially promulgated rules and regulations. It is undisputed that PTI, as a creation of the judicial branch, must comport with the same constitutional guarantees as must legislative action. *American Trial Lawyers' Ass'n v. Supreme Court,* 66 *N. J.* 258, 264–65 (1974) ; *see Cooper v. Aaron,* 358 *U. S.* 1, 16–17, 78 *S. Ct.* 1401, 1409–10, 3 *L. Ed.* 2d 5, 16 (1958). It is the quality and impact of State action, and not its origin as among the several branches of government, that carries import.

Defendants' first constitutional claim is that it is impermissible to extend PTI to those accused of indictable offenses and not those accused of nonindictable offenses. As we have hitherto made clear, pretrial intervention essentially serves two purposes: rehabilitation of defendants, in part

through avoidance of guilt adjudication and its attendant stigmatization, and the expeditious disposition of cases in relief of congested criminal calendars. *State v. Leonardis, supra,* 71 *N. J.* at 89–90; *Guideline 1 (a-e).* The issue thus is whether the exclusion of persons charged with nonindictable offenses can be said to be rationally related to those purposes.

It seems clear that it can. First, conviction for an indictable offense will normally carry with it a graver significance in terms of incarceration and collateral consequences than will be true of conviction for a disorderly or other petty offense.[2] The stigmatization being more traumatic with respect to the former type of offense, so will avoidance thereof be more significant.

In the second place, it is certain that the diversion of those who have been indicted will contribute more toward reducing calendar congestion. The jury trials incident to the disposition of indicted offenders are more elaborate, more expensive and far more time-consuming than the relatively simple disposition of charges against petty offenders.

Finally, we note that fiscal and administrative constraints may be legitimately considered. Lack of money or manpower places pragmatic limitations on many a worthy endeavor. Nor, as is here contended, are such considerations impermissible. For instance, limited resources available for welfare may be allocated by a State in a manner which favors some above others provided a rational basis for the allocation is perceived. *Dandridge v. Williams,* 397 *U. S.* 471, 483–87, 90 *S. Ct.* 1153, 1160–62, 25 *L. Ed.* 2d 491,

---

[2] A disorderly persons offense carries a maximum penalty of six months imprisonment in a county institution and a fine of $500, *N. J. S. A.* 2A:169-4, which penalty may be suspended and a defendant placed on probation for not more than three years. *Id.* 169-6. A motor vehicle conviction carries a maximum punishment by way of imprisonment of one-sixth the maximum which may be imposed on a defendant convicted as a disorderly person, although a third offender is subject to the maximum authorized by the Disorderly Persons Act, *N. J. S. A.* 39:4-50(a).

501–03 (1970); *Jefferson v. Hackney,* 406 *U. S.* 535, 549–51, 92 *S. Ct.* 1724, 1732–34, 32 *L. Ed.* 2d 285, 297–99 (1972). So, too, the exclusion of a class of addicts from a rehabilitation program may rest, in part at least, upon a State's determination to allocate finite resources in aid of those most likely to benefit from the program. *Marshall v. United States, supra,* 414 *U. S.* 417, 429, 94 *S. Ct.* 700, 707, 38 *L. Ed.* 2d 618, 628 (1974). It must be remembered that under the rational basis test, classifications are not required to be mathematically perfect or incapable of improvement. *See Hudson Circle Servicenter, Inc. v. Kearny,* 70 *N. J.* 289, 316–18 (1976). The State is able to recognize degrees of harm and strike at what it believes to most urgently require attention. *See State v. Smith,* 58 *N. J.* 202, 207 (1971).

We conclude that the exclusion of disorderly and other petty offenses from a PTI program clearly rests upon a rational basis.

With respect to defendants' second constitutional claim, there are at present five counties in which the PTI program makes provision for those accused of nonindictable offenses; in all other counties having such a program, it is restricted to those guilty of indictable offenses. The acts with which defendants are charged were committed in counties having programs which exclude those charged with nonindictable offenses. Defendants assert they have thus been deprived of their rights of equal protection. We disagree.

There is no dispute that defendants accused of nonindictable offenses are treated uniformly as a class within each county. "The Equal Protection Clause relates to equality between persons as such rather than between areas . . . Territorial uniformity is not a constitutional requisite." *Salsburg v. Maryland,* 346 *U. S.* 545, 551, 74 *S. Ct.* 280, 283–284, 98 *L. Ed.* 281, 288 (1953). Such distinctions will be upheld if there is a rational basis for them. *See San Antonio Indep. School Dist. v. Rodriguez, supra,* 411 *U. S.* at 28 n. 66, 93 *S. Ct.* at 1294, 36 *L. Ed.* 2d at 40. *See State v. Leonardis, supra,* 71 *N. J.* at 120–21. The point was

early set to rest in the case of *Bowman v. Lewis,* 101 *U. S.* 22, 25 *L. Ed.* 989 (1880). By the Constitution and Laws of Missouri an appeal lay to the Supreme Court of that state from a judgment of the circuit court of any county except from a judgment of those courts located in four named counties and in the City of St. Louis. In the latter areas there was no appeal as of right to the Supreme Court of the state. In an opinion by Justice Bradley the Court unanimously agreed that this presented no equal protection violation. The opinion stated that

[i]f the State of New York . . . should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the 14th Amendment, be a denial to any person of the equal protection of the laws. . . . For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.

The 14th Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities in the laws and judicial proceedings may exist in the several States without violating the equality clause in the 14th Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State. [*Bowman v. Lewis, supra,* 101 *U. S.* at 31, 25 *L. Ed.* at 992]

In the later case of *Salsburg v. Maryland, supra,* the Supreme Court examined certain statutory law of Maryland which, prior to *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961), permitted the introduction of illegally

obtained evidence in gambling cases tried in certain counties but not in others. Relying heavily upon *Bowman v. Lewis, supra,* the Court sustained the statutes as not in violation of the Fourteenth Amendment. It went on to point out that the legislature could either itself determine such an issue for each of its counties or allow the counties themselves to do so by an exercise of local option. *Salsburg v. Maryland, supra,* 346 *U. S.* at 552, 74 *S. Ct.* at 284, 98 *L. Ed.* at 288. It added that

the state government might well find reason to prescribe, at least on an experimental basis, substantive restrictions and variations in procedure that would differ from those elsewhere in the State. Criminal law provides a long-established field for such legislative discretion. [346 *U. S.* at 553, 74 *S. Ct.* at 285, 98 *L. Ed.* at 289]

*See United States ex rel. Buonoraba v. Commissioner of Corrections,* 316 *F. Supp.* 556, 564–65 (S. D. N. Y. 1970) (statewide uniformity in criminal procedure not demanded by equal protection); *People v. McNaught,* 31 *Cal. App.* 3d 599, 602–07, 107 *Cal. Rptr.* 566, 568–70 (Ct. App. 1973) (legislature may, consistent with equal protection, provide for diversion of alcoholics in lieu of criminal prosecution subject to individual county's decision to implement program.) A rational basis for the distinctions in admissions criteria among counties is the experimental nature of PTI. In *State v. Leonardis, supra,* Justice Pashman observed that

as a relatively recent innovation, pretrial intervention may still be described as essentially experimental. Experience with PTI in New Jersey illustrates that such programs may assume a variety of forms and serve a variety of functions. While we feel that the PTI concept is now well established in this State, we, nonetheless, appreciate the need for experimentation, evaluation, assessment and modification of programs. [71 *N. J.* at 114]

We therefore conclude that upon this issue as well, there has been no impairment of the equal protection rights of any of these defendants.

232

The judgments of the courts below, denying each of these defendants entry into a pretrial intervention program, are hereby affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For reversal*—None.