273 N.J. Super. 536 (1994)
642 A.2d 1034
KENNETH J. COSTELLO, APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 1994.
Decided May 24, 1994.
*537 Before Judges BRODY, STERN and KEEFE.
Kenneth J. Costello, appellant, filed a pro se brief.
Deborah T. Poritz, Attorney General, attorney for respondent (Mary C. Jacobson, Assistant Attorney General, of counsel; Geraldine Callahan, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
A person who has received unemployment compensation benefits must requalify in order to receive such benefits after the benefit year. A "benefit year" is defined as "the 364 consecutive calendar days beginning with the day on, or as of, which he first files a valid claim for benefits[.]" N.J.S.A. 43:21-19(d). In order *538 to requalify, a person must engage in "four weeks of employment since the beginning of the immediately preceding benefit year" (emphasis added) and have "earned at least six times his previous weekly benefit amount." N.J.S.A. 43:21-4(e)(4). The Board of Review rejected appellant's argument that he satisfied these requirements through his service to a municipality for more than four weeks in a "workfare" program as a condition to his receipt of General Assistance. We agree with the Board and affirm.
"Workfare" was authorized by N.J.S.A. 44:8-114, L. 1990, c. 66, § 17, which, at the time in question, provided in part that the "Division [of Employment Services in the Department of Labor] shall provide for the establishment of public work programs for the assignment of employable persons in receipt of public assistance." The statute expressed its purpose as a work-relief or work-training program for the unemployed by limiting its work requirement to employable but unemployed recipients who are actively seeking employment and by allowing the work requirement to be satisfied by performing public work or enrolling in job training:
Willingness to report for or to perform work shall be demonstrated by maintaining a current registration with the division; by reporting to a division office upon request and providing all required information; by reporting for employment interviews as scheduled by the division; by accepting employment or better employment when offered, whether or not the offer is made through or referred by the division; by accepting training for employment as offered when the person is unemployed; and by continuing in employment training, unless the person has good cause to fail or refuse to report for or to perform the work to which the person has been assigned.
[L. 1990, c. 66, § 17.][1]
During part of appellant's benefit year, he received a grant of assistance under the General Public Assistance Law, N.J.S.A. *539 44:8-107 to -157. Pursuant to N.J.S.A. 44:8-111(d), the Commissioner of the Department of Human Services promulgated regulations respecting the "workfare" component of such grants. N.J.A.C. 10:85-10.1 required "[a]ll employable recipients of General Assistance" to participate in workfare, defined as a "system by which certain persons perform work or engage in various training or work preparation activities in exchange for their grants of assistance." Worksite assignments were established either by the municipal welfare director or the New Jersey Employment Service. N.J.A.C. 10:85-10.3 provided in part:
(a) Worksite assignments may be established by the municipal welfare director to perform work for the municipality or for a non-profit agency or institution under contract to the municipality.
(b) Worksite assignments may be established by the Employment Service in the performance of work for county or State Agencies as well as municipal agencies, non-profit agencies and institutions. Assignment by the Employment Service to a General Educational Development (high school equivalency) course or any other training or occupational preparedness program will be considered a worksite assignment.
N.J.A.C. 10:85-10.5(a) provided:
The type of work to be performed by an employable GA recipient will be based upon an assessment of the individual's employment capabilities and the service needs of the municipality. Whenever possible, worksites will permit an individual to utilize and/or enhance his/her employment capabilities in order to maximize that individual's chances of obtaining unsubsidized employment.
Appellant satisfied the workfare requirement by performing service for the Lacey Township Department of Public Works.
"Employment," the prerequisite for requalification, generally means "[a]ny service ... performed for remuneration or under any contract of hire, written or oral, express or implied." It includes "[s]ervice performed ... by an individual in the employ of this State or any of its instrumentalities or any political subdivision thereof ... if such service is not excluded from `employment' under paragraph (D) below." N.J.S.A. 43:21-19(i)(1)(B)(ii). "Employment" also includes "[s]ervice performed ... by an individual *540 in the employ of a religious, charitable, [or] educational ... organization ... if such service is not excluded from `employment' under paragraph (D) below." N.J.S.A. 43:21-19(i)(1)(c).
We express no opinion as to whether workfare satisfied the general definition of "employment." But even if it did, workfare may not be considered employment because N.J.S.A. 43:21-19(i)(1)(D)(v) excludes from the definition of "employment" services performed
[b]y an individual receiving work-relief or work-training as part of an unemployment work-relief or work-training program assisted in whole or in part by any federal agency or an agency of a state or political subdivision thereof[.]
As is evident from the quoted portion of former N.J.S.A. 44:8-114 and the foregoing workfare regulations, workfare was such an "unemployment work-relief or work-training program" and therefore may not be counted as "employment" to requalify a person for unemployment compensation benefits.
We reject appellant's argument that the exclusion unconstitutionally denies him equal protection of the unemployment compensation law because he is poor. A legislative classification to be constitutional need only be rationally related to a legitimate state interest. Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989). A classification is considered suspect and therefore subjected to stricter scrutiny only if membership in the class is defined by having an "immutable characteristic determined solely by the accident of birth." State v. Senno, 79 N.J. 216, 226, 398 A.2d 873 (1979) (quoting Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583, 591 (1973)). Poverty does not give rise to membership in a suspect class. Right to Choose v. Byrne, 91 N.J. 287, 305, 450 A.2d 925 (1982).
Placing workfare within this exclusion from the definition of employment is rationally related to the State's legitimate interest in creating and preserving a fund, financed by employer and *541 employee contributions or payments in lieu thereof, that offers workers some protection against the hazard of unemployment. See Carpet Remnant Warehouse v. Dept. of Labor, 125 N.J. 567, 581, 593 A.2d 1177 (1991). The Legislative declaration of policy, embodied in N.J.S.A. 43:21-2 of the unemployment compensation law, articulates the manner by which that policy is implemented:
This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state requires the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment.
There is no such "systematic accumulation of funds during periods of employment" under workfare programs "to provide benefits for periods of unemployment." It is therefore reasonable for the Legislature to exclude services performed in such programs from the definition of "employment" when determining whether the minimum employment requirement for requalification has been met.
Affirmed.
NOTES
[1] The current version of N.J.S.A. 44:8-114, L. 1991, c. 523, § 14, effective July 1, 1992, incorporates workfare into the Family Development Initiative, established by N.J.S.A. 44:10-22, a part of the comprehensive Family Development Act, N.J.S.A. 44:10-19 et seq. The purposes of that act, expressed in N.J.S.A. 44:10-20, include training the unemployed and underemployed.