698 A.2d 1296

STATE OF NEW JERSEY, PLAINTIFF,
v. SCOTT INGLIS, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Hudson County

April 10, 1997.

*Carmen Messano*, Hudson County Prosecutor (*Lawrence Posner*, Assistant Prosecutor, appearing for the State.)

*James J. Tutak* appearing for defendant, Scott Inglis.

JOSE L. FUENTES, J.S.C.

This matter comes before the court by way of an appeal from the Secaucus Municipal Court, seeking a *de novo* [1] review of the municipal court's decision not to consider the defense of insanity in the prosecution of defendant for drunk driving, *N.J.S.A.* 39:4–50. After considering oral and written argument of counsel and reviewing the municipal court transcripts and expert report submitted, this court concludes that the insanity defense is unavailable to a defendant being prosecuted under the provisions of *N.J.S.A.* 39:4–50.

## I. *Factual And Procedural History*

The facts in this case are not in dispute. On February 25, 1995, as Mr. Scott Inglis was entering the New Jersey Turnpike at Exit 15W from Route 280, he lost control of his vehicle, which struck the curb and a light pole before becoming airborne and crashing into the roof of the toll booths. Mr. Inglis was treated for injuries at the trauma center of the University of Medicine and Dentistry of New Jersey located in Newark. An analysis of his blood revealed that he had a blood alcohol concentration of .40, which is four times the legal limit.

At his trial before the Municipal Court of Secaucus, Mr. Inglis stipulated to these facts and moved for a verdict of not guilty due to insanity. In support of his motion, Mr. Inglis demonstrated that he has a history of psychiatric treatment related to depression and alcohol abuse. In addition, Mr. Inglis submitted a report prepared by Dr. Taxali D. Shah. In the report, Dr. Shah diagnosed Mr. Inglis as "suffering a chronic condition, Bi-polar Disorder which *renders him very depressed and suicidal.*" Dr. Shah concluded that "[o]n December 27, 1994, he [Mr. Inglis] became very depressed and started drinking and wanted to kill himself. He did not know that what he was doing, namely operating a motor vehicle while drinking, was wrong."

---

[1] *State v. Johnson*, 42 *N.J.* 146, 199 *A.2d* 809 (1964); *R.* 3:23–8.

The municipal court judge held that the insanity defense was unavailable to defendants charged with driving under the influence. Furthermore, the judge stated that even if the insanity defense were available, Mr. Inglis would be unable to satisfy its requirements. Mr. Inglis was found guilty of driving under the influence. This being Mr. Inglis' third conviction, he was sentenced to 180 days in jail, fined $1,000.00, and had his licensed suspended for 10 years.

## II. *Legal Analysis*

The question of whether the insanity defense is available in drunk driving cases is an issue of first impression. Two Supreme Court cases have addressed whether affirmative defenses apply to drunk driving charges. *State v. Fogarty*, 128 *N.J.* 59, 607 *A.*2d 624 (1992); *State v. Hammond*, 118 *N.J.* 306, 571 *A.*2d 942 (1990). There is no doubt that defenses appearing in the New Jersey Code of Criminal Justice (Code) are inapplicable to drunk driving charges. In *Hammond*, the Court held that driving while intoxicated is not an "offense" as defined by the Code; therefore, provisions of the Code governing principles of liability, as well as the Code defense of involuntary intoxication, are not applicable to drunk driving charges. *Hammond, supra*, 118 *N.J.* at 318, 571 *A.*2d 942. In *Fogarty*, the Court held that the Code defenses of entrapment and duress are not applicable to drunk driving charges. *Fogarty, supra*, 128 *N.J.* at 64, 70, 607 *A.*2d 624. As in *Hammond*, the Court in *Fogarty* reasoned that since driving while intoxicated is not an "offense" under the Code, Code defenses did not apply. *Id.* at 64, 607 *A.*2d 624 Consistent with the Supreme Court's decision in *Hammond* and *Fogarty*, this court holds that the Code defense of insanity [2] is inapplicable to the charge of drunk driving.

It is not clear which, if any, common-law defenses apply to drunk driving charges. *Fogarty* suggests that certain common-law defenses are available to those charged with Title 39 offenses.

---

[2] *N.J.S.A.* 2C:4–1.

"[A] defendant charged with a motor vehicle offense does not forfeit all constitutional and common-law defenses." *Ibid.* (citation omitted). "[C]ommon-law defenses may be available as long as they have not been precluded by the statute defining the offense." *Id.* at 70, 607 *A.*2d 624 (citing *State v. Tate,* 102 *N.J.* 64, 74, 505 *A.*2d 941 (1986)). The question that must be answered, therefore, is whether the offense of driving while intoxicated as defined by *N.J.S.A.* 39:4–50 and as construed by the Supreme Court precludes the common-law insanity defense. To answer this question, it is necessary to analyze the offense of driving while intoxicated, paying close attention to the legislative intent behind the statute as well as to prior judicial decisions concerning the offense. Such an analysis reveals that the offense of driving while intoxicated precludes the common-law defense of insanity for two reasons. The first is that the statute creating the offense embodies a strong legislative policy of precluding defenses that have a high potential for being pretextual. The second is that driving while intoxicated is an absolute liability offense, a fact that militates against permitting a defense that focuses on a defendant's lack of mental culpability.

### *Public Policy Against Pretextual Defenses*

██ With respect to drunk driving, it is clear that the legislature intended to discourage long trials complicated by pretextual defenses. *Hammond, supra,* 118 *N.J.* at 317, 571 *A.*2d 942. The provision of *N.J.S.A.* 39:4–50 which makes it a per se violation to drive with a blood alcohol concentration of .10 reflects this policy. Prior to the enactment of the per se violation provision, defendants were permitted to present evidence of subjective sobriety in an effort to rebut the presumption of intoxication created by a blood alcohol concentration in excess of .15. *State v. Hammond, supra,* 118 *N.J.* at 316, 571 *A.*2d 942; *L.* 1951, *c.* 23, sec. 30 (amended 1983). Defenses based on a particular driver's subjective state of intoxication had a high potential of being pretextual, thus prolonging trials and obscuring the truth. One of the legislature's purposes in creating a per se offense was to preclude

such defenses. *State v. Downie*, 117 *N.J.* 450, 569 *A.*2d 242 (1990); *State v. Tischio*, 107 *N.J.* 504, 515, 527 *A.*2d 388 (1987). Acknowledging the legislative policy against permitting potentially pretextual defenses, the Supreme Court in *Hammond* and *Fogarty* refused to apply the common-law defenses of involuntary intoxication, entrapment, and duress to drunk driving cases, concluding that these defenses had a high potential for being pretextual.

In this case, the defense at issue is the insanity defense. In New Jersey, insanity at common-law was determined by applying the *M'Naghten* standard, which states:

> If at the time of committing the act, the accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong, he was legally insane.
>
> [*State v. Maik*, 60 *N.J.* 203, 212, 287 *A.*2d 715 (1972).]

■ As with involuntary intoxication, entrapment, and duress, the insanity defense has a high potential for serving as an instrument of pretext. When evaluating whether a particular defense has a high potential for pretext, the focus should be on the ease with which a defendant can allege a frivolous defense. In this respect, there is little difference between Mr. Inglis' insanity defense and the involuntary intoxication defense rejected in *Hammond*. In *Hammond*, a witness testified that as part of a joke, he mixed drinks for the defendant in a manner that disguised the taste of alcohol and that, as a result the defendant was unaware that he had consumed alcohol when he began to drive his car. It is true that the defense of insanity requires the involvement of an expert in the field of psychiatry, making it more difficult to allege than involuntary intoxication. However, the expert report submitted in this very case demonstrates the relative ease with which a defendant can allege a meritless defense, thereby prolonging proceedings and obscuring the truth. Defendant alleges that he satisfies the *M'Naghten* test because at the time he was operating his car he did not know that what he was doing was wrong. The psychiatric report submitted in support of Mr. Inglis' insanity defense states:

Scott Inglis is suffering a chronic condition, Bi-polar Disorder which renders him very depressed and suicidal. On December 27, 1994, he became very depressed and started drinking and wanted to kill himself. He did not know that what he was doing, namely operating a motor vehicle while drinking, was wrong.

There is nothing in the report that explains how depression or the desire to commit suicide can interfere with a person's ability to understand the wrongfulness of an act. The examining physician's report is conclusory; it merely parrots the words of the *M'Naghten* test. It may be that when Mr. Inglis got into his car on the night in question, he was so consumed by depression that he did not concern himself with contemplating the wrongfulness of drinking and driving. In a suicidal state, Mr. Inglis may have discarded or abandoned his sense of social responsibility, but this alone does not amount to insanity under the *M'Naghten* standard which requires that, due to a mental disease, the defendant not "know" that drinking and driving is wrong.

Like involuntary intoxication, the insanity defense has a high potential for pretext. Therefore, allowing a defendant prosecuted under *N.J.S.A.* 39:4–50 to assert the common-law insanity defense would be contrary to the legislative policy embodied in the statute against permitting potentially pretextual defenses.

### *N.J.S.A. 39:4–50 Is A Strict Liability Offense.*

The offense of driving under the influence precludes the common-law insanity defense for a second reason. Defendant alleges that he satisfies the *M'Naghten* test because at the time he was driving, he suffered from a mental disease that caused him not to know that driving under the influence was wrong. This prong of the *M'Naghten* test focuses on the culpability of a defendant's state of mind. "However, driving under the influence is a strict liability offense, requiring no culpable mental state . . . ." *Hammond, supra,* 118 *N.J.* at 314, 571 *A.*2d 942. Therefore, it is irrelevant whether Mr. Inglis knew or appreciated that driving under the influence was wrong. In *Hammond,* the Court explained how the fact that driving under the influence is an

absolute liability offense militates against permitting defenses that negate mental culpability.

> It would allow proof that simply because intoxication is "involuntary," a motorist unable to refrain from driving or to appreciate that it was wrong to drive while so intoxicated could be excused. Yet, it is precisely these conditions—the inability to stop driving or to evaluate the wrongfulness of driving while drunk—that the statute seeks to punish. The interjection of "involuntariness" or lack of knowledge as an excuse would be wholly discordant with the liability envisioned by the statute.
>
> [*Id.* at 315, 571 *A*.2d 942]

Therefore, in this case, as in *Hammond*, Mr. Inglis cannot avoid conviction by arguing that he was not mentally culpable.

## III.  *CONCLUSION*

Determining whether a common-law defense is available to a defendant charged with driving under the influence requires an analysis of the offense itself.   Common-law defenses may be permitted as long as they are not precluded by the offense.   The *per se* violation provision of *N.J.S.A.* 39:4–50 is an expression of the legislature's intent to preclude defenses which can serve as instruments of pretext.   The expert report submitted on behalf of Mr. Inglis demonstrates the relative ease with which a defendant can allege a meritless insanity defense, which in turn reveals that the insanity defense has a high potential for being pretextual. Furthermore, the fact that driving under the influence is an absolute liability offense militates against permitting defenses that negate mental culpability.   For these reasons, this court concludes that the common-law insanity defense is unavailable to defendants charged with driving under the influence.   Based on the undisputed record developed in the municipal court, this court finds the defendant guilty of D.W.I., *N.J.S.A.* 39:4–50.